**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                                   :

                                                         :     Case No. 19-10412 (JLG)
                                                         :     Chapter 11
Ditech Holding Corporation, *et al.*,                    :

                                                         :
                                   Debtors.[1]           :     (Jointly Administered)

------------------------------------------------------------x

Varnel Diggs,                                            :

                                                         :
                                   Plaintiff,            :

                                                         :
           v.                                            :     Adv. Proc. No. 19-01255 (JLG)

                                                         :
Ditech Financial LLC,                                    :

                                                         :
                                   Defendant.            :

------------------------------------------------------------x


**MEMORANDUM DECISION GRANTING**
**THE PLAN ADMINISTRATOR'S MOTION FOR JUDGMENT ON THE PLEADINGS**


**APPEARANCES:**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for Plan Administrator*
*on Behalf of the Wind Down Estates*
767 Fifth Avenue

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors*, ECF No. 1404 (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate") remains open and, as of February 22, 2022, all motions, notices, and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number are (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Boulevard, Suite 300, League City, Texas 77573.

New York, New York 10153
By:    Ray C. Schrock, P.C.
         Richard W. Slack
         Alexander Welch

VARNEL DIGGS[2]
*Appearing Pro Se*
17111 Copperhead Dr.
Round Rock, Texas 78664

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[3]

Varnel L. Diggs (the "Claimant" or "Mr. Diggs") purports to be a creditor of Ditech

Financial, LLC ("Ditech") on account of matters relating to Ditech's servicing of the mortgage on

his Property.[4]  He has not filed a proof of claim in these Chapter 11 Cases.  In this adversary

proceeding (the "Adversary Proceeding"), Mr. Diggs seeks to quiet title to the Property and to

recover $10,000 in punitive damages on account of Ditech's alleged "negligence per se" in

servicing his mortgage.

The action originated prior to the Petition Date in the United States District Court for the

Western District of Texas (the "Texas Federal District Court").[5]  As filed, Mr. Diggs's complaint

(the "Complaint")[6] seeks relief against Ditech and Ms. Nicole Bartee, Ditech's prior counsel.  The

---

[2] Mr. Diggs did not appear at the argument on the Motion.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.  References to "ECF No. __" are to documents filed on the electronic docket in the main bankruptcy case jointly administered cases under Case No. 19-10412.  References to "AP ECF No. __" are to documents electronically filed in the Adversary Proceeding, Case No. 19-01255.  References to documents electronically filed in the Texas Federal District Court and Texas State Court will include the respective case name and case number preceding the document number.

[4] The mortgage documents identify Claimant as "Varnell Lee Diggs," rather than "Varnel L. Diggs," which is the name that Claimant uses in this proceeding. The Court understands both spellings to refer to the same individual.

[5] *See Diggs v. Ditech Fin., LLC*, No. 18-cv-00974 (W.D. Tex. filed Nov. 13, 2018).

[6] *Complaint*, AP ECF No. 1.

Complaint "[i]nvok[es] the Common Law Jurisdiction" and identifies the court as the "Diggs Superior Court" at the Texas Federal District Court.  Complaint at 1-2.[7]

On April 2, 2019, after the Petition Date, the Texas Federal District Court, *sua sponte*, severed the claims against Ms. Bartee into a separate action in that court. On May 16, 2019, the court transferred the venue of the Diggs action to the United States District Court for the Southern District of New York.[8]  The district court referred the action to this Court and on June 4, 2019, the Court opened this Adversary Proceeding.

This is the third action that Mr. Diggs has brought with respect to the mortgage, and the second of such actions in which he has named Ditech as a defendant.  In each of the two previous actions (the "First Action" and "Second Action," respectively),[9] Mr. Diggs has sought to quiet title to the Property.  In both of those actions, the trial court granted summary judgment dismissing the underlying complaints.  *See* First Action Motion for Summary Judgment ("First Action MSJ"), First Action Final Judgment, Second Action Motion for Summary Judgment ("Second Action MSJ"), and Second Action Final Judgment.[10]

---

[7] In an exhibit annexed to the Complaint titled "Judicial Notice Ministerial Officer," Mr. Diggs writes: "As the living man this case is adjudicate [sic] by way of common law writ, I am settling this suit at law in the capacity of my judicial authority, as sovereign by serving the clerk of this court with an 'Action on the case' document to perform an 'Execution of instrument'." *See* Complaint, Ex. A-2 Judicial Notice Ministerial Officer.

[8] *Diggs v. Ditech Fin. LLC*, No. 19-04984 (S.D.N.Y. filed May 29, 2019).

[9] *See Diggs v. USAA Fed. Savings Bank, et al*, No. D-1-GN-11/003154 (345th Dist. Ct., Travis County, Tex. Oct. 13, 2011) (the "First Action") and *Diggs v. Ditech Fin. LLC*, No. D-1-GN-16-001406 (353rd Dist. Ct., Travis County, Tex. Apr. 4, 2016) (the "Second Action"). The docket of the First Action (the "First Action Docket") is annexed as Exhibit A to the Motion.  The docket sheet for the Second Action (the "Second Action State Docket") is annexed as Exhibit F to the Motion.

[10] The First Action MSJ, Action Final Judgment, Second Action MSJ, and Second Action Final Judgment are annexed as Exhibits C, D, L and O to the Motion, respectively. The Court takes judicial notice of the documents annexed to and referenced by the Motion (and the exhibits to those documents), the documents annexed to and referenced by the Complaint, and to proceedings relating to Mr. Diggs and the Property, as they are matters of public record and are integral to the Adversary Proceeding.  *Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir. 2023) ("In assessing a Rule 12(c) motion, the court "may consider . . . (1) the complaint *or* answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice."  (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc*., 6 F.4th 293, 306 (2d Cir. 2021)));

The matter before the Court is the Plan Administrator's motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)")[11] for judgment on the pleadings in the Adversary Proceeding (the "Motion").[12]  On March 19, 2024, Mr. Diggs filed his response to the Motion (the "Response").[13]  On March 21, 2024, the Plan Administrator filed its Reply in further support of the Motion (the "Reply").[14]

The Court held oral argument on the Motion.  The Plan Administrator appeared through counsel.  Claimant did not appear.  The Plan Administrator advised that its counsel provided the pro se Claimant with a courtesy reminder of the hearing via email the day before the hearing.  Mr. Diggs responded to the email, although the Plan Administrator could not discern from the response whether he intended to appear at the hearing.  Claimant did not register for the hearing and did not contact the Court for an adjournment of the hearing or otherwise.  At the hearing, the Plan Administrator rested on its papers.

The Court has reviewed the Complaint, Motion, Response, and Reply, including all documents submitted in support thereof.  For the reasons set forth herein, the Court grants the Plan Administrator judgment on the pleadings dismissing the Complaint.

---

*LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 441 (S.D.N.Y. 2018) (stating that, compared to motions under Rule 12(b)(6), "[t]he standard applicable to documents a court may consider in ruling on a motion for judgment on the pleadings under Rule 12(c) is slightly broader, allowing consideration not only of the nonmoving party's pleading, but also that of the moving party").

[11] Rule 12(c) is made applicable in the Adversary Proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

[12] Plan Administrator's Motion for Judgment on the Pleadings in the Adversary Proceeding of Varnell Diggs, AP ECF No. 8.

[13] *Notice of Abatement*, AP ECF No. 10.

[14] Reply of Plan Administrator in Further Support of the Plan Administrator's Motion for Judgment on the Pleadings in the Adversary Proceeding of Varnell Diggs, AP ECF No. 11.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

On or around February 14, 2007, Mr. Diggs executed a Texas Home Equity Note (the "Note")[15] with USAA Federal Savings Bank ("USAA") in the amount of $111,200, which was secured by a mortgage on real property located at 17111 Copperhead Drive, Round Rock, Texas, 78664 (the "Property").

On March 8, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for USAA, assigned the mortgage to GMAC Mortgage, LLC, ("GMAC") effective as of February 22, 2007.[16] On February 1, 2013, GMAC assigned Claimant's mortgage to Green Tree Servicing, LLC ("Green Tree").[17]

Claimant admits that he has not made payments on the loan since November 10, 2010. Complaint at 3. On or around April 18, 2011, GMAC, through counsel, provided Mr. Diggs with notice of the acceleration of the mortgage (the "April 2011 Acceleration Notice").[18] On July 8, 2011, GMAC brought an action to foreclose on the Property.[19]

---

[15] The Note is annexed as Exhibit A-1 to the First Action MSJ.

[16] The assignment is annexed as Exhibit A-3 to the First Action MSJ.

[17] The assignment is annexed as Exhibit D to the Second Action MSJ.

[18] The April 2011 Acceleration Notice is annexed as Exhibit 4 to the Second Action Complaint.

[19] *See GMAC Mortg. LLC v. Diggs*, No. D-1-GN-11-002053 (250th Dist. Ct., Travis County, Tex. Jul. 8, 2011).

**Mr. Diggs's First Action**

On October 12, 2011, Mr. Diggs brought the First Action against USAA, MERS, and Federal National Mortgage Association ("Fannie Mae") in the Texas District Court of Travis County, Texas (the "Texas State Court"). In the operative complaint in that action (the "First Action Complaint"),[20] he asserted claims for "mistaken and erroneous representation as to standing to foreclose," "predatory lending practices," quiet title, and injunctive relief. *See* First Action Complaint at 2-17. In substance, he contended that the defendants were not the valid holders of a lien on the Property, and that there were conflicting claims to the ownership of the Note and mortgage. *Id.* at 7, 14. He also argued that the assignment of the mortgage to GMAC was fraudulent or invalid because the signatory did not have the power or authority to execute it. *Id.* at 12-14.

On August 3, 2012, defendants jointly filed the First Action MSJ seeking dismissal of the First Action. They asserted they were entitled to enforce the mortgage as assignee and the holder of the mortgage. First Action MSJ at 6-7. The defendants argued that since they had standing to bring the foreclosure action, the quiet title claim failed as a matter of law. *Id.* at 11-12. They also argued that Texas state law does not recognize a cause of action for predatory lending and Mr. Diggs had otherwise not alleged any cognizable cause of action against them. *Id.* at 12-14. On August 28, 2012, the Texas State Court issued the First Action Final Judgment granting the First Action MSJ and dismissing the First Action with prejudice.

In September 2012, Mr. Diggs filed a motion for a new trial, and a motion for reconsideration of the First Action Final Judgment in the Texas State Court. The court denied both motions. *See* First Action Docket at 3-4. In December 2012, he filed a motion to vacate the order

---

[20] The First Action Complaint is annexed as Exhibit B to the Motion.

denying his motion for reconsideration. *Id.* at 4. On January 3, 2013, the Texas State Court denied the motion. *Id.*

On January 18, 2013, Mr. Diggs appealed the First Action Final Judgment to the Texas Third District Court of Appeals (the "Texas State Court of Appeals"). *Id.* at 4-5. On December 18, 2013, the Texas State Court of Appeals dismissed Mr. Diggs's appeal for want of jurisdiction. *See* Texas State Court of Appeals Order at 2-3.[21]

### Mr. Diggs's Second Action

On April 4, 2016, Mr. Diggs commenced the Second Action in the Texas State Court against Ditech, the then-servicer of his mortgage. In that action, he sought to quiet title to the Property, and asserted that the lien on the Property was invalid and unenforceable as time-barred. *See* Second Action Complaint at 5.[22] Mr. Diggs argued that Texas law bars foreclosure actions commenced later than four years after the day the action accrues—i.e., the day the subject mortgage is accelerated. *Id.* at 3-4. Relying on the April 2011 Acceleration Notice, Mr. Diggs argued that the statute of limitations had expired, rendering the lien on the Property void. *Id.* at 4.

Ditech failed to appear in the action, and on May 19, 2016, the Texas State Court entered a default judgment against Ditech. *See* Second Action State Docket at 1. Thereafter, Ditech filed a motion to vacate the default judgment, asserting that it had not been properly served with the Second Action Complaint (the "Motion for New Trial").[23] On June 30, 2016, before the Texas State Court ruled on the Motion for New Trial, Ditech removed the Second Action to the Texas

---

[21] The Texas State Court of Appeals Order is annexed as Exhibit E to the Motion.

[22] The Second Action Complaint is annexed as Exhibit G to the Motion.

[23] The Motion for New Trial is annexed as Exhibit H to the Motion.

Federal District Court on the basis of diversity jurisdiction.[24]  The court referred the Motion for

New Trial to a magistrate judge.  On October 17, 2016, the magistrate judge issued his report and

recommendation on the motion (the "First Report and Recommendation").[25]  The magistrate judge

found that Mr. Diggs did not properly serve Ditech with the Second Action Complaint and

recommended vacating the default judgment and granting the Motion for New Trial.  First Report

and Recommendation at 4-7.  On December 9, 2016, the Texas Federal District Court adopted the

First Report and Recommendation in full and ordered Ditech to file a responsive pleading by

January 8, 2017.[26]

On January 3, 2017, Ditech filed the Second Action MSJ seeking to dismiss the Second

Action.  In its motion, Ditech acknowledged that the four-year statute of limitations to enforce the

lien on the Property began to run with the April 2011 Acceleration Notice.  Second Action MSJ at

3.  However, Ditech sent a subsequent notice of default on June 4, 2013 (the "June 2013 Default

Notice")[27] informing Mr. Diggs that he could cure his default under the mortgage by paying an

amount that was less than the full amount due under the mortgage.  *Id.*  Ditech contended that in

sending the June 2013 Default Notice, it abandoned the April 2011 Acceleration Notice, and

restored the original maturity date of the mortgage.  *Id.* at 4-7.  Ditech argued that by reason of the

June notice, the four-year statute of limitations ceased to run, and would not begin to run again

---

[24] *See Diggs v. Ditech Fin. LLC*, No. 16-cv-00828 (W.D. Tex. filed Jun. 30, 2016).  The notice of removal (the "Notice of Removal") and the docket sheet for the Second Action in the Texas Federal District Court (the "Second Action Federal Docket") are annexed as Exhibits I and K to the Motion, respectively.  Ditech's Notice of Removal asserted the Texas Federal District Court had diversity jurisdiction over the Second Action as the parties, Diggs and Ditech, were diverse and the amount in controversy exceeded $75,000.  Notice of Removal ¶¶ 10-23.

[25] The First Report and Recommendation is annexed as Exhibit J to the Motion.  *See also* Order and Report and Recommendation of the United States Magistrate Judge, *Diggs v. Ditech Fin., LLC*, No. 16-CV-828 (W.D. Tex. Oct. 17, 2016), Second Action Federal Docket ECF No. 13.

[26] *See* Order on Interim Report and Recommendation of the United States Magistrate Judge, *Diggs v. Ditech Fin., LLC*, No. 16-CV-828 (W.D. Tex. Dec. 9, 2016), Second Action Federal Docket ECF No. 16.

[27] The June 2013 Default Notice is annexed as Exhibit A-2 to the Second Action MSJ.

until the lender exercised its right to accelerate the mortgage, and therefore, Mr. Diggs could not establish that the mortgage was invalid or unenforceable.  *Id.* at 7.

On January 11, 2017, Mr. Diggs filed a motion for summary judgment and an opposition to the Second Action MSJ (the "Diggs Second Action MSJ").[28]  Mr. Diggs argued that the Texas Federal District Court should extinguish Ditech's lien on the Property because the limitations period had run.  He also argued that Ditech had not abandoned the April 2011 Acceleration Notice because Ditech did not provide notice of its intention to abandon it.

The Texas Federal District Court referred the summary judgment motions to the magistrate judge.  On April 28, 2017, the magistrate judge issued a report and recommendation, which addressed, *inter alia*, the pending summary judgment motions (the "Final Report and Recommendation").[29]  The court recommended (i) denying the Diggs Second Action MSJ, and (ii) granting the Second Action MSJ.  *See* Final Report and Recommendation at 9-10.  The court held that the June 2013 Default Notice abandoned the prior mortgage acceleration and restored the mortgage's original maturity date.  *Id.* at 4-6.  On May 9, 2017, Mr. Diggs objected to the Final Report and Recommendation.  On May 26, 2017, the Texas Federal District Court issued its Second Action Final Judgment adopting the Final Report and Recommendation and dismissing the Second Action Complaint.[30]

On June 21, 2017, Mr. Diggs appealed the Second Action Final Judgment to the United States Court of Appeals for the Fifth Circuit.  On March 14, 2018, the Fifth Circuit affirmed the

---

[28] The Diggs Second Action MSJ is annexed as Exhibit M to the Motion.

[29] The Final Report and Recommendation is annexed as Exhibit N to the Motion; *see also* Order and Report and Recommendation of the United States Magistrate Judge, *Diggs v. Ditech Fin., LLC*, No. 16-CV-828 (W.D. Tex. Apr. 28, 2017), Second Action Federal Docket ECF No. 30.

[30] *See* Final Judgment, *Diggs v. Ditech Fin., LLC*, No. 16-CV-828 (W.D. Tex. May 26, 2017), Second Action Federal Docket ECF No. 37.

Second Action Final Judgment. *See Diggs v. Ditech Fin., LLC.*, 714 F. App'x 471, 473 (5th Cir. 2018) (per curiam) ("Diggs argues that the magistrate judge erred in several respects. After reviewing the magistrate and district court's opinions, the briefs, and pertinent portions of the record, we conclude that the lower courts did not commit reversible error. Therefore, we AFFIRM the judgment of the district court.").

**The Adversary Proceeding**

On November 13, 2018, Mr. Diggs filed the Complaint commencing the Adversary Proceeding against Ditech and Ms. Bartee. In it, Mr. Diggs asserts that on or about August 2, 2018, Ditech sent him a notice of default under the mortgage with an opportunity to cure the default by September 6, 2018 (the "August 2018 Default Notice"), and that on or around August 13, 2018, he mailed Ditech a "Notice and Demand" in which he disputed the debt and argued that the debt was time-barred. Complaint at 2.[31] Mr. Diggs asserts, as he did in the Second Action, that in filing the June 2013 Default Notice, Ditech triggered the four-year statute of limitations, and the deadline to foreclose on the Property lapsed on June 6, 2017. *Id.* The gravamen of the Complaint is that the mortgage lien is invalid and unenforceable because the four-year statute of limitations for enforcing the mortgage lapsed more than a year prior to the issuance of the August 2018 Default Notice. *Id.*

Mr. Diggs is asserting two claims for relief in the Complaint. He contends that by purporting to accelerate the loan and to foreclose the mortgage after the statute of limitations had expired, Ditech committed "the intentional act of negligence per se" and should be held responsible for punitive damages of $10,000 (the "Negligence Claim"). Complaint at 3-4; *see also id.* at 5 (In part, contending that his "wish" is to "[be] awarded punitive damages of $10,000."). Second, Mr.

---

[31] The "Notice and Demand" is annexed as Exhibit B-8 to the Complaint.

Diggs seeks to "quiet title" to the Property (the "Quiet Title Claim"). Complaint at 5.[32] On January 8, 2019, Ditech filed its answer to the Complaint (the "Answer").[33]

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates, including Ditech (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession of their business and assets as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the "General Bar Date").[34] The General Bar Date was twice extended for consumer borrowers and the Court ultimately set the date as June 3, 2019.[35]

---

[32] In the Complaint, Mr. Diggs "request[s] a remedy under trespass to try title by which to resolve competing claims to property, [he] seeks a writ that voids any adverse claim, to vest clear title in the name of the claimant." Complaint at 3. To that end, he annexes an exhibit to the Complaint titled "Judicial Notice Trespass Title" in which he sets forth the elements of a trespass to try title cause of action. *See* Complaint at 14. A trespass to try title claim is similar to, but different than a quiet title claim. *Faith P. & Charles L. Bybee Found. v. Knutzen*, 681 S.W.3d 818, 828 (Tex. App. 2023) ("A claim for trespass to try title is distinct from a claim to quiet title, though the differences are nuanced."). "A trespass-to-try-title action is the proper procedural vehicle 'when the claimant is seeking to establish or obtain *the claimant's* ownership or possessory right in the land at issue.'" *King Operating Corp. v. Double Eagle Andrews, LLC*, 634 S.W.3d 483 (Tex. App. 2021) (quoting *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018)). Ditech does not dispute Mr. Diggs' ownership of the Property. It asserts a lien on the Property, and Mr. Diggs seeks to remove that lien from the Property. That is the purpose of a quiet title action. *Brumley v. McDuff*, 616 S.W.3d 826, 835 (Tex. 2021) ("[A] legal action to quiet title is traditionally one in which the superior title holder seeks to remove a challenge to that title."). As Claimant is appearing pro se and the Court is to construe his pleadings liberally, the Court reads the Complaint as asserting a quiet title claim.

[33] The Answer is annexed as Exhibit Q to the Motion.

[34] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[35] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

On March 12, 2019, Ditech filed its notice of bankruptcy in the Adversary Proceeding. On May 16, 2019, the Texas Federal District Court transferred the venue of the action to the United States District Court for the Southern District of New York, which in turn referred and transferred it to this Court. On December 1, 2019, while this Adversary Proceeding was pending, Ditech transferred servicing of Mr. Diggs's mortgage to NewRez LLC ("NewRez").[36] Ditech no longer services any mortgages and has no active business.[37]

## The Motion

The Plan Administrator contends that the Court should grant it judgment on the pleadings and dismiss the Complaint pursuant to Rule 12(c) because (i) the Quiet Title Claim is moot; (ii) by application of the doctrine of res judicata, the Adversary Proceeding, including the Quiet Title Claim and Negligence Claim, is barred by the preclusive effect of the Second Action Final Judgment; (iii) Mr. Diggs fails to state a cognizable claim for relief under either the Quiet Title Claim or the Negligence Claim, and (iv) as a matter of law, punitive damages are not recoverable from Ditech. Motion ¶¶ 1-3, 5-6.[38]

## The Response

The Response largely repeats the arguments Mr. Diggs made in support of the First and Second Actions. In the Response, he focuses on allegations relating to Ms. Bartee and the notices

---

[36] The notice of transfer to NewRez (the "Notice of Servicing Transfer") is annexed as Exhibit R to the Motion.

[37] *Memorandum Decision and Order Granting the Plan Administrator's Motion and Authorizing the Wind Down Estates to (i) Abandon and Dispose of Obsolete Physical Records and (ii) Not Take Further Action on Incur Further Liability to Maintain Access to Additional Obsolete Electronic Records*, ECF No. 4763 at 6 ("The Wind Down Estates no longer have any operating businesses . . . . Among other things, the Plan Administrator has . . . [r]educed Ditech's workforce from more than 2,900 employees to zero full-time employees, and a few contractors on a part-time basis, all of whom are employed solely for wind down purposes.").

[38] In support of the Motion, the Plan Administrator also asserts that the Court should dismiss the Complaint because Mr. Diggs should have made his claims through a filed proof of claim and Mr. Diggs has failed to prosecute the Complaint. Motion ¶¶ 4, 7. The Court has no need to consider these arguments given its resolution of the Motion on other grounds.

she sent relating to the mortgage.  Response at 1.  He denies that he has failed to prosecute the

Adversary Proceeding, stating that he "cannot continue prosecuting [his] case until [a] verified

claim is filed on the Law side of the courtroom to begin jury selection" and has declined the Court's

"invitation" to file a proof of claim.  *Id.*

## The Reply

In the Reply, the Plan Administrator contends that the Response does not address most of

the Motion's arguments.  Reply ¶ 2.  The Plan Administrator also says that Mr. Diggs's arguments

in the Response, and the cited cases, have little to no relevance to any of the issues in the Motion.

*Id.* ¶¶ 3, 7-8.

## ANALYSIS

Rule 12(c) "provides that 'a party may move for judgment on the pleadings' anytime

'[a]fter the pleadings are closed—but early enough not to delay trial.'"  *In re Vivendi Universal,*

*S.A., Sec. Litig.*, 842 F. Supp. 2d 522, 526 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P.  12(c)).  "The

standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for

granting] a Rule 12(b)(6) motion for failure to state a claim."  *Lynch v. City of New York*, 952 F.3d

67, 75 (2d Cir. 2020) (alteration in original) (quoting *Patel v. Contemp. Classics*, 259 F.3d 123,

126 (2d Cir. 2001)); *see also* Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which

relief can be granted . . . may be raised . . . by a motion under Rule 12(c).").

"To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Lively*, 6 F.4th at

301 (alteration in original) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  A

claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Accordingly, "[j]udgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'" *Hartford Fire Ins. Co. v. W. Union Co.*, 630 F. Supp. 3d 431, 434 (S.D.N.Y. 2022) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).

In evaluating a Rule 12(c) motion, "the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *In re Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015) (quoting *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989)). In doing so, a court "considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 80 (S.D.N.Y. 2023) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). Where, as here, the plaintiff is appearing pro se, the litigant's submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 623 (S.D.N.Y. 2022) (quoting *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018)); *see also United States v. Starling*, 76 F.4th 92, 99 (2d Cir. 2023) ("Parties have a right to self-representation, and '[i]mplicit' in this right 'is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).

The Plan Administrator argues that the Complaint fails to state a claim upon which relief can be granted on either the Quiet Title Claim and Negligence Claim. The Adversary Proceeding was initiated in Texas prior to its transfer to this Court. Thus, in analyzing the adequacy of the pleadings in support of the claims, the Court applies Texas law. *Seavey v. Chrysler Corp.*, 930 F.

Supp. 103, 106 (S.D.N.Y. 1996) ("On a change of venue under 28 U.S.C. § 1404, the transferee court applies the substantive law, including the choice of law rules, of the transferor jurisdiction." (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524-25 (1990))).

## Quiet Title Claim

"A suit to quiet title is an equitable action used to establish that an adverse party's claim to property is invalid, and to remove the cloud caused by the invalid claim from the owner's title." *Wagner v. CitiMortgage, Inc.*, 995 F. Supp. 2d 621, 626 (N.D. Tex. 2014). To prevail on his Quiet Title Claim, Mr. Diggs must establish that (1) he has an interest in the Property, (2) title to the Property is affected by a claim by Ditech, and (3) Ditech's claim, although facially valid, is invalid or unenforceable. *Edry-TX-II, GP v. CCND-Main ST Shopping Ctr., LP*, 683 S.W.3d 450, 455 (Tex. App. 2023). In asserting a claim for quiet title, he "has the burden of establishing [his] 'superior equity and right to relief,' relying on the strength of [his] own title, not the inferiority of the defendants' title." *Cook-Bell v. Mortg. Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (quoting *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. 2009)).

The Court grants the Plan Administrator judgment on the pleadings dismissing the Quiet Title Claim pursuant to Rule 12(c) because, as explained below, (i) the claim is moot, (ii) the preclusive effect of the Second Action Final Judgment bars the claim, and (iii) on its face, the claim fails to state a plausible claim for relief because, contrary to the allegations in support of the Complaint, as a matter of law, the statute of limitations does not bar the claim. The Court considers those matters below.[39]

---

[39] In the Complaint, Mr. Diggs asserts that the "Chain Of Conveyance Is Superior Than That of Tort-feasors, Out Of a Common Source [sic]," and as support, he cites to a number of exhibits annexed to the Complaint. *See* Complaint at 3. Those exhibits are comprised of documents relating to a mortgage on the Property held by Wells Fargo that has been paid in full, but that, apparently, has not been released:

***The Quiet Title Claim Is Moot***

The Court can consider whether an action or claim is moot at any time or stage of the litigation, including, as here, on a Rule 12(c) motion. *Deverow v. City of New York*, No. 15 6710, 2017 WL 711763, at *5 (S.D.N.Y. Feb. 7, 2017) (finding plaintiff's claim for injunctive relief moot on motion for judgment on the pleadings); *Tequila Cuervo la Rojena, S.A. de C.V. v. Jim Beam Brands Co.*, No. 10 cv 0203, 2011 WL 407938, at *2 (S.D.N.Y. Feb. 8, 2011) (granting 12(c) motion where stipulation rendered the action moot). A federal court's jurisdiction is limited to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III [of the Constitution]—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 96 (2d Cir.

---

Exhibit C-15: Certification from Wells Fargo, which states that Mr. Diggs paid off loan number 936-8003219733 on February 21, 2007.

Exhibit C-16: Letter from Wells Fargo dated March 16, 2007, confirming that that loan had been paid in full.

Exhibit C-17: Document titled "Release of Lien," in which Wells Fargo acknowledged full payment and satisfaction of the deed of trust and reconveyed its interest "to the person or persons legally entitled thereto."

Duplicate Exhibit C-17: Title search from "ProTitleUSA," shows two open mortgages on the property. The first is a deed of trust signed on August 13, 1993, and recorded on August 23, 1993, for which no release was found. The document shows that an assignment of the deed of trust to Wells Fargo Bank, N.A. was recorded on January 26, 2007. The second open mortgage is a "Texas Home Equity Security Instrument (First Lien)," signed on February 14, 2007, and recorded on February 22, 2007, with MERS as nominee for USAA Federal Savings Bank as the lender. This mortgage was subsequently assigned to GMAC Mortgage, LLC on May 21, 2011, and then to Green Tree Servicing on March 17, 2014.

Exhibit C-18: Document titled "Homestead Affidavit" sworn by Mr. Diggs on January 21, 2016, stating that the Property is "set apart" as his "homestead."

The Wells Fargo mortgage is not relevant to Mr. Diggs' claims against Ditech in the Complaint. Mr. Diggs fails to state a claim to Quiet Title by reference to the documents summarized above, since these documents relate only to a lien by Wells Fargo, who is not a party to the Adversary Proceeding and who, in any event, Mr. Diggs does not allege is responsible for a cloud of title on the Property.

2020) (alteration in original) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)); *see also*

*Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022) ("If because of changed

circumstances 'a case that presented an actual redressable injury at the time it was filed ceases to

involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction

and must be dismissed for mootness.'" (quoting *Conn. Citizens Def. League, Inc. v. Lamont*, 6

F.4th 439, 444 (2d Cir. 2021))).  The Plan Administrator argues that Ditech's sale of its assets to

NewRez eliminated its interest in the Property and renders the Quiet Title Claim moot, because

Ditech no longer services the mortgage, and any possible relief would not be effective against

Ditech.

To determine whether Ditech has an interest in the Property, the Court looks to Texas law.

*In re Richmond*, 534 B.R. 479, 483 (Bankr. E.D.N.Y. 2015) ("The rights of a mortgagee are

determined by the state law governing the relevant mortgage instruments.").  When Mr. Diggs

filed the Complaint, Ditech was the servicer of his mortgage.  However, during the pendency of

the Chapter 11 Cases, Ditech sold the right to service Mr. Diggs's loan to NewRez.  *See* Notice of

Servicing Transfer.  Ditech does not service Mr. Diggs's loan and affirmatively states that it "no

longer asserts an interest in the Property."  *See* Motion ¶ 46; *Pate v. Zientz*, No. 4:09CV643 LEAD,

2011 WL 1575501, at *2 (E.D. Tex. Apr. 25, 2011) ("Ameriquest has disclaimed any interest in

the subject property. . . [t]herefore, any claim to quiet title against Ameriquest would be moot.").

NewRez, as current servicer, not Ditech, as former servicer, has an interest in the Property.  Indeed,

NewRez commenced a foreclosure action against Claimant in November 2022.[40]  Accordingly,

the Court finds that Claimant's Quiet Title Claim is moot because relief cannot be ordered against

---

[40]  *See NewRez LLC v. Diggs*, No. D-1-GN-22-006785 (261st Dist., Travis County, Tex. Nov. 23, 2022).  The
docket in that case indicates that an order was entered on March 5, 2024, granting NewRez's motion for summary
judgment.

Ditech and Ditech no longer has a legally cognizable interest in the outcome of this Adversary

Proceeding. *Dominguez v. Dominguez*, 583 S.W.3d 365, 371 (Tex. App. 2019) (dismissing

appellant's challenge to a judgment against him on trespass to title claim as moot because the

relevant property had since been sold); *Mortg. Elec. Registration Sys., Inc. v. Disanti*, No. 02-10-

00169-CV, 2011 WL 255815, at *2 (Tex. App. Jan. 27, 2011) (holding MERS's appeal moot

because it assigned the underlying note and no longer had an interest in the property); *see also*

*Riley v. Rivers*, 15-cv-5022, 2015 WL 13956218, at *1 (E.D.N.Y. Oct. 23, 2015) (dismissing a

quiet title action because "[t]he law could not be any clearer" that the court does not have "the

ability to issue any relief against Citi when Citi is no longer on the title"); *see also HSBC Bank*

*USA, Nat'l Ass'n v. TFHSP, LLC*, No. 17-CV-542-ALM-CAN, 2017 WL 6811799, at *3 (E.D.

Tex. Dec. 14, 2017) (explaining that under Texas law, "intermediaries in the chain of title are not

necessary parties to an action . . . so long as they no longer claim a possessory interest in the

disputed property"); *Hickey v. Henry*, No. 06-97-109, 1998 WL 34344897, at *4 (Tex. App. Aug.

26, 1998) ("Only persons claiming a present interest in land that constitutes a cloud on title are

necessary parties to a quiet title suit, even if a result of the suit voids a conveyance under which

they once claimed, but no longer do so.").

### *The Second Action Final Judgment Bars the Quiet Title Claim*

The preclusive effect of a prior judgment is dictated by the doctrines of res judicata or

claim preclusion and collateral estoppel or issue preclusion. *Schwartz v. HSBC Bank USA*, N.A.,

160 F. Supp. 3d 666, 674 (S.D.N.Y. 2016); *see also Brownback v. King*, 592 U.S. 209, 215 n.3

(2021).[41]  Under the doctrine of res judicata, a final judgment on the merits in an action precludes

---

[41] The term "res judicata" may refer to both the doctrine of claim preclusion alone and to the doctrines of claim preclusion and issue preclusion collectively. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc*., 590 U.S. 405, 411 (2020) (describing the term "res judicata" to "comprise[] two distinct doctrines regarding the preclusive

the same parties or their privies from relitigating claims that were raised or could have been raised in an earlier litigation. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 B.R. 59, 72 (Bankr. S.D.N.Y. 2023) (citing *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 43 (2d Cir. 2013) (summary order)).    Collateral estoppel is narrower and "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (quoting *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 284 (2d Cir. 2012)). "[R]egardless which of the two doctrines is invoked, 'the idea is that an issue definitively settled once is forever settled as between the parties.'" *Oyekwe v. Rsch. Now Grp., Inc.*, 542 F. Supp. 3d 496, 506 (N.D. Tex. 2021) (quoting *Langley v. Prince*, 926 F.3d 145, 163-64 (5th Cir. 2019)).

In the Complaint, Mr. Diggs seeks to quiet title to the Property, in part, based on the alleged expired statute of limitations for bringing a foreclosure action against the Property.    Texas has a four-year statute of limitations for bringing foreclosure actions.    Tex. Civ. Prac. & Rem. Code § 16.035(a), (d).    Mr. Diggs contends that the statute of limitations for bringing a foreclosure action against the Property accrued on June 6, 2013 and lapsed on June 6, 2017.    Complaint at 2.    He says that Ditech sent the August 2018 Default Notice more than fourteen months after the statute of limitations expired and is barred from bringing suit against him.    *Id.*    In making those allegations, Mr. Diggs necessarily contends that the June 2013 Default Notice that Ditech sent Mr. Diggs triggered the statute of limitations.

The Plan Administrator contends that Mr. Diggs is barred from making that argument.    In the Second Action Final Judgment, the Texas Federal District Court accepted and adopted the

---

effect of prior litigation. . . . The first is issue preclusion (sometimes called collateral estoppel) . . . . The second doctrine is claim preclusion (sometimes itself called res judicata)." (citations omitted)).

Final Report and Recommendation.  It held that under Texas state law, the June 2013 Default Notice did not trigger the statute of limitations; rather, it abandoned the April 2011 Acceleration Notice and restored the Note's original maturity date.  Final Report and Recommendation at 4-6. The district court found that the foreclosure statute of limitations ceased to run in June 2013 and would not restart until Ditech exercised its right to accelerate the Note.  *Id.* at 4-5.  That determination was affirmed on appeal by the Fifth Circuit.  The Plan Administrator argues that the Quiet Title Claim is barred by application of res judicata.  Reply ¶¶ 35-42.

Ditech did not plead the affirmative defenses of res judicata or collateral estoppel in its Answer.  Nonetheless, it can raise those defenses in support of the Motion, as it is settled that "a party may raise an affirmative [defense] for the first time in a Rule 12(c) motion."  *Arciello v. Cnty. of Nassau*, No. 216-cv-3974, 2019 WL 4575145, at *4 (E.D.N.Y. Sept. 20, 2019).  Thus, "[a] court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment."  *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010); *see also Cowen v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 74 (S.D.N.Y. 2001) (determining that raising a defense of res judicata for the first time in a Rule 12(c) motion does "not affect the Court's ability to entertain the res judicata defense"); *U.S. Fid. & Guar. Co. v. Petroleo Brasiliero*, No. 98-cv-3099, 2001 WL 300735, at *23 n.17 (S.D.N.Y. Mar. 27, 2001) ("A collateral estoppel defense . . . may be analyzed on a Rule 12(c) motion where all the relevant facts are set forth in the complaint and in matters of which the Court may take judicial notice.").

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."  *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008). Thus, in this case, the Court will apply the res judicata law of Texas in determining whether the

Second Action Judgment bars the Quiet Title Claim. *See Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) ("As a matter of federal common law, federal courts sitting in diversity apply the preclusion law of the forum state unless it is incompatible with federal interests."); *see also In re MSR Resort Golf Course LLC*, 515 B.R. 36, 44–51 (Bankr. S.D.N.Y. 2014) (applying Arizona state law when determining the preclusive effect of a judgment by an Arizona district court sitting in diversity).

Under Texas law, claim preclusion has three elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

In evaluating the final factor, the Texas Supreme Court has adopted the "transactional test." *Johnson-Williams v. Citimortgage, Inc.*, 750 F. App'x 301, 304 (5th Cir. 2018) (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)). In simple terms, that test evaluates "whether the two actions under consideration are based on 'the same nucleus of operative facts . . . .'" *Ries v. Paige (In re Paige)*, 610 F.3d 865, 872 (5th Cir. 2010) (quoting *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 386 (5th Cir. 2000)); *accord Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630 (Tex. 1992) ("A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. . . . Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit.").

The first element of res judicata is present here because the Texas Federal District Court dismissed Claimant's quiet title claim in the Second Action at the summary judgment phase, which

amounts to a final judgment on the merits. *See, e.g., Marsh v. U.S. Bank, N.A.*, No. SA-21-CV-00321-XR, 2021 WL 2227391, at *4 (W.D. Tex. June 1, 2021) (holding "there [was] no doubt" that a district judge's adoption of a magistrate's report and recommendation on the defendants' dispositive motion "constitute[d] a final judgment on the merits"); *Ayati-Ghaffari v. JP Morgan Chase Bank, N.A.*, No. 18-CV-483-ALM-CAN, 2019 WL 1550141, at *6 (E.D. Tex. Feb. 10, 2019) (holding that an order containing similar language as the Second Action Final Judgment was an adjudication on the merits for purposes of res judicata); *Barr*, 837 S.W.2d 630.

The second element, identity or privity of the parties, is satisfied because the parties in the Second Action and the parties in the Adversary Proceeding are identical or in privity. *See Rosetta Res. Operating, LP*, 645 S.W.3d at 225. The Second Action Complaint identified only Mr. Diggs and "Ditech Financial LLC" as parties to the Second Action. Second Action Complaint at 1. Likewise, the Complaint identifies only Mr. Diggs and Ditech as defendants in the Adversary Proceeding. Complaint at 1.[42]

Finally, the quiet title claim in the Complaint is based on the same claims that Mr. Diggs raised or could have raised in the Second Action. That action chiefly sought to quiet title. Mr. Diggs alleges that Ditech was "pretending to be the mortgagee and/or lender servicer," Second Action Complaint at 4; that the "[a]cceleration notice dated 04/18/2011 surpass[ed] the [statute] of limitation[s] to collect on this alleged debt," *id.*; and that Ditech "deliberately with[held] a fraudulent notice of assignment from [the Texas 345th Judicial District] court to conceal their criminal involvement in its fraudulent creation and use in an attempt to effect owner, holder or

---

[42] The Complaint lists Ms. Bartee in the caption, but the section of the Complaint describing "Parties" identifies her as only a "representative" of Ditech. As noted, any claims against her were severed prior to transfer of these proceedings. To the extent that Ms. Bartee is included as a separate defendant, she is in privity with Ditech as its then-counsel, and so the second element of res judicata is satisfied. *See Rosetta Resources Operating, LP*, 645 S.W.3d 212, 225 (Tex. 2022) (explaining that privity may exist where, among other things, parties control an action or their interests can be represented by a party to the action).

holder [sic] in due course status for the purpose of collecting a debt that they do not have rights to," *id.* at 2.  There, Mr. Diggs challenged the lien on his property as "invalid," "unenforceable," "time-barred," subject to the "Unclean Hands Doctrine," and established by a "fraudulent notice of assignment." *Id.* at 1-3.  In his Complaint, Mr. Diggs also is seeking to quiet title.  He alleges that the lien is "void on it's [sic] face," Complaint at 2; that he has been the "superior lien holder since 1993," *id.* at 3; and that the "loan has been in dispute since Nov. 10, 2010," *id.*  Namely, they took place either at the time of the assignment, in 2016, or as early as 1993.

In the Second Action, Mr. Diggs raised his claim for quiet title on the basis that the statute of limitations to enforce the loan expired in June 2017.  By application of the doctrine of res judicata, Mr. Diggs is barred from asserting that claim in the Complaint.  In short, Mr. Diggs cannot continue to raise substantially the same challenge to the same lien on the same Property every time Ditech attempts to enforce its long-settled property rights.  *See Johnson-Williams*, 750 F. App'x at 305 (finding the final element satisfied where a subsequent action echoes prior allegations involving "the same property, the same documents, and the same foreclosure").

### *Mr. Diggs Fails to State a Plausible Claim to Quiet Title to the Property*

Under Texas law, a mortgage servicer "must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a), (d).  A cause of action for foreclosure accrues when a mortgage servicer accelerates the loan.  *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Jorrie v. Bank of New York Mellon Tr. Co., N.A.*, No. 5:16-CV-490-DAE, 2017 WL 6403054, at *6 (W.D. Tex. Sept. 11, 2017) ("[A] cause of action accrues and the four-year statute of limitations period begins to run when the note holder exercises its option to accelerate a debt.").

23

Mr. Diggs appears to assert that Ditech's lien on the Property is invalid because the statute of limitations has run for Ditech to bring a foreclosure claim. Complaint 2. The prior servicer, GMAC, accelerated the mortgage in April 2011. However, in June 2013, Green Tree sent Claimant the June 2013 Default Notice permitting him to pay less than the full amount due under the Note to cure the default. Mr. Diggs argues that the statute of limitations restarted with the June 2013 Default Notice. For the same reasons set out in the Final Report and Recommendation, Mr. Diggs misinterprets the law.

Under Texas law, "a lender may unilaterally abandon acceleration of a note, thereby restoring the note to its original condition . . . by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms." *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015); *see also Cross v. Bank of New York Mellon*, No. H-20-1322, 2021 WL 2581584, at *7 (S.D. Tex. June 23, 2021) ("If abandonment is effective, the noteholder is no longer required to foreclose within four years of the date of the acceleration." (quoting *Ocwen Loan Servicing, L.L.C. v. REOAM, L.L.C.*, 755 F. App'x 354, 356 (5th Cir. 2018) (per curiam))). The Texas Federal District Court held exactly that—the June 2013 Default Notice had the effect of abandoning the April 2011 Acceleration Notice, and that the four-year statute of limitations period would "not begin to accrue until the [owner] default[s] again and [the bank] exercise[s] its right to accelerate thereafter." Final Report and Recommendations at 6. Ditech did not exercise its right to accelerate the mortgage in the 2013 notice of default to trigger the statute of limitations. In this respect, Mr. Diggs has failed to state a claim to quiet title under Texas law.

**Negligence Claim**

Because Mr. Diggs initiated the Adversary Proceeding in Texas, the Court applies Texas state law in determining the sufficiency of his Negligence Claim under Rule 12(c). *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Under Texas law, a negligence claim consists of three elements: (i) a legal duty, (ii) a breach of that duty, and (iii) damage proximately caused by the breach. *Elephant Ins. Co. LLC v. Kenyon*, 644 S.W. 3d 137, 144 (Tex. 2022). In support of the Negligence Claim, Mr. Diggs argues that Ditech sent him Notices of Demand and the August 2018 Default Notice in violation of Texas's four-year statute of limitations for foreclosure actions. Complaint at 2-3. Mr. Diggs suggests that by sending him this default notice, Ditech is negligent per se. Complaint at 2.

In Texas, negligence per se "is not a cause of action separate and independent from a common-law negligence cause of action." *Zavala v. Trujillo,* 883 S.W.2d 242, 246 (Tex. App. 1994). Rather, it "is a common-law doctrine that allows courts to rely on a penal statute to define a reasonably prudent person's standard of care." *Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex. 2001); *see also Smith v. Merritt*, 940 S.W. 2d 602, 607 (Tex. 1997) ("Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims."). "The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *see also Nichols v. McKinney*, 553 S.W. 3d 523, 531 (Tex. App. 2018) ("[T]here are three threshold questions to be answered by the court in every negligence *per se* case: whether the plaintiff belongs to the class that the statute was intended to protect, whether the plaintiff's injury is of a type that the statute

was designed to prevent, and whether, based on several non-exclusive factors, it is appropriate to impose tort liability for violations of the statute in question." (citing *Perry v. S.N.*, 973 S.W.2d at 305)).

When the doctrine applies, a plaintiff may establish negligence as a matter of law by proving that the defendant violated the statute and that the violation proximately caused the plaintiff's injury. *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App. 2009); *see also Zavala v. Trujillo,* 883 S.W.2d at 246 ("Negligence per se is merely one method of proving, through proof of an unexcused violation of a penal statute designed to protect the class of persons to which the injured party belongs, the breach of duty required in any negligence cause of action, establishing negligence as a matter of law." (footnote omitted)).  "If a violation is not established, [the Court] need not consider any other elements of the negligence per se claim."  *Stierwalt v. FFE Transportation Servs., Inc.*, 499 S.W.3d 181, 195 (Tex. App. 2016).

Mr. Diggs cannot rely on a theory of negligence per se to establish a legal duty or breach thereof.  Section 16.035 provides that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues" after which "the real property lien and a power of sale to enforce the real property lien become void."  Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a), (d).  However, the statute does not support a claim against Ditech because section 16.035 is not penal in nature.  *Cf. Ridgecrest Ret. & Healthcare v. Urb.,* 135 S.W.3d 757 (Tex. App. 2004) ("A violation of a non-penal administrative code statute does not establish a negligence per-se claim."); *see also In re SMIC, Ltd.*, No. 10-40120-DML-11, 2013 WL 4078704, at *8 n.32 (Bankr. N.D. Tex. Aug. 13, 2013) ("Texas courts have repeatedly held that mere civil and administrative penalties are not penal in nature and cannot form the basis for negligence per se."); *Coyoy v.*

26

*CoreCivic, Inc.*, No. SA-19-CA-00916-FB, 2022 WL 18034487, at *9 n.3 (W.D. Tex. Oct. 11, 2022) (collecting Texas cases dismissing negligence per se claims predicated on alleged violations of non-penal rules or regulations).

Moreover, in any event, Mr. Diggs's claim for negligence per se is defeated by the preclusive effect of the Second Action's determination that the June 2013 Default Notice abandoned the prior mortgage acceleration. "Under Texas law, collateral estoppel bars a party from relitigating issues when '(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.'" *Heslin v. Jones (In re Jones)*, 655 B.R. 868, 877 (Bankr. S.D. Tex. 2023) (quoting *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002)).

To determine whether the first factor is met, courts consider "(1) whether the parties were fully heard, (2) that the court supported its decision with a reasoned opinion, and (3) that the decision was subject to appeal or was in fact reviewed on appeal." *Bierscheid v. JPMorgan Chase Bank*, 606 S.W.3d 493, 533 (Tex. App. 2020) (quoting *BP Auto. LP v. RML Waxahachie Dodge, LLC*, 517 S.W.3d 186, 200 (Tex. App. 2017)). The effect of the June 2013 Default Notice on the relevant statute of limitations was at the core of the Second Action. Ditech and Mr. Diggs submitted motions for summary judgment premised on this issue and were fully heard. The Texas Federal District Court adopted the Final Report and Recommendation, and both the Second Action Final Judgment and the Final Report and Recommendation were supported with a reasoned opinion. Mr. Diggs appealed the Second Action Final Judgment to the Fifth Circuit, and the Fifth Circuit affirmed the Texas Federal District Court's holding. The first factor is met.

As to the second factor, the Second Action's decision that the June 2013 Default Notice abandoned the April 2011 Acceleration Notice and restored the Note's original maturity date was essential to the judgment.  To determine whether "the lien [was] invalid because Ditech failed to bring suit for foreclosure within four years after the note was accelerated," Final Report and Recommendation at 4—and thus Mr. Diggs's quiet title claim—the Texas Federal District Court reasoned that the June 2013 Default Notice abandoned the April 2011 Acceleration Notice. Because the district court's finding on the statute of limitations issue was necessary to its dismissal of the quiet title claim, the second factor is met.

The third factor is satisfied because Mr. Diggs and Ditech were adversaries in the Second Action and are adversaries in the Adversary Proceeding.  Accordingly, Mr. Diggs is precluded from arguing that the statute of limitations started to run on June 6, 2013.

Mr. Diggs's negligence per se claim is premised on the default notices he received from Ditech and its attorney, Ms. Bartee, between August and October 2018, and the notice of acceleration Ms. Bartee sent him in October 2018.  Thus, even if Mr. Diggs were correct that sending these notices would have been negligent if the statute of limitations to foreclose on the Property had already lapsed, his claim must fail if the June 2013 Default Notice abandoned the prior mortgage acceleration.  That is exactly what the Second Action determined, and that determination is entitled to preclusive effect.

Finally, even if that determination were not entitled to preclusive effect, Mr. Diggs would still have failed to plausibly allege a claim of negligence. The threshold inquiry of a negligence claim is duty; if there is no duty, there can be no liability for negligence. *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012).  Ditech was the mortgage servicer of Mr. Diggs's loan, and under Texas law, mortgage servicers do not owe borrowers a duty of care.  *Kovalchuk v.*

*Wilmington Sav. Fund Soc'y*, 528 F. Supp. 3d 647, 660-61 (E.D. Tex. 2021). There is generally no special or fiduciary duty between a mortgage servicer and a borrower. *Id.* "To be clear, 'Texas does not impose a legal duty on a mortgagee or mortgage servicer to a mortgagor that would give rise to a negligence claim.'" *Id.* at 661 (quoting *Del Rio Trejo v. Bank of Am., N.A.*, No. 3:19-CV-01406-L, 2020 WL 982004, at *2 (N.D. Tex. Jan. 21, 2020)); *see also Lombardi v. Bank of Am.*, No. 13-cv-1464-O, 2014 WL 988541, at *11 (N.D. Tex. Mar. 13, 2014) ("Her negligence claim ultimately fails as a matter of law because Defendants, as the mortgagee and mortgage servicer, owed her no duty of care outside of their contractual obligations."). Ditech did not owe any duty of care outside of its contractual obligations to Mr. Diggs necessary to satisfy the first element of his negligence claim.

**Claimant Cannot Recover Punitive Damages**

In the Complaint, Mr. Diggs seeks punitive damages on account of Ditech's alleged negligence.[43] Irrespective of the merits of the Negligence Claim, Mr. Diggs is not entitled to recover punitive damages from Ditech, because, as a matter of law, they are unavailable against an insolvent chapter 11 debtor.

Under the Bankruptcy Code, punitive damages are available to claimants only after all general unsecured claims are paid in full. *See In re Motors Liquidation Co.*, 590 B.R. 39, 63 (S.D.N.Y. 2018) ("Specifically, the Bankruptcy Code provides for full repayment of the claims of general unsecured creditors before any punitive damages may be paid."). Accordingly, where a chapter 11 debtor is unable to satisfy all unsecured claims in full, punitive damages are unavailable

---

[43] In support of his claim of punitive damages, Claimant says that the "interference [with the title to the Property] has harmed and effected [his] quality of life, this property tort, is an intentional interference to deprive claimant's right of full possession to enjoy his property." Complaint at 4.

as a matter of law. *Id.* Under the Third Amended Plan, general unsecured creditors receive only

a pro rata share of their claims, and thus Claimant cannot recover punitive damages.

## **CONCLUSION**

Based on the foregoing, the Plan Administrator is entitled to judgment on the pleadings in

the Adversary Proceeding.

SETTLE AN ORDER.

Dated: May 16, 2024
       New York, New York

/s/ James L. Garrity, Jr.
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge